## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**KATIE STILES,**

      **Plaintiff,**

**vs.**                                          **Case No. 8:12-cv-02375-T-27EAJ**

**SHERIFF GRADY JUDD et al.,**

      **Defendants.**

_____/

## <u>ORDER</u>

**BEFORE THE COURT** are Defendants', Sheriff Grady Judd, etc., Motion to Dismiss Fourth Amended Complaint (Dkt. 56),[1] and Defendant, Correctional Medical Services, Inc., Crystal Parker, and Timothy McRae, M.D.'s Motion to Dismiss Plaintiff's Fourth Amended Complaint (Dkt. 58). Plaintiff responded in opposition to each (Dkts. 59, 60). Upon consideration, the motions (Dkts. 56, 58) are GRANTED *in part* and DENIED *in part*.

## I.    INTRODUCTION

### A.    <u>Factual Background</u>

Bradley Norris was arrested by the Auburndale Police Department in May 2010 and booked into a jail operated by Polk County Sheriff Grady Judd. Dkt. 55 ¶ 19.[2] During intake, jail personnel allegedly learned that Norris was clinically depressed, bipolar, taking psychiatric medication, and had a history of auditory hallucination. *Id.* ¶ 20. One week after his arrest, Norris was transferred to

---

[1]Docket entry 56 is filed on behalf of Defendants Sheriff Grady Judd, Captain C.E. Burke, Sgt. MB Wulf, Lt. Palmer, Sgt. Daughtry, Sgt. McIntosh, Officer Mizell, and Officer Rayburn.

[2]Stiles alleges that Norris was held as both a pretrial detainee and an inmate serving a sentence for violation of probation. *See* Dkt. 55 ¶ 19.

Lake Wales Medical Center to be treated for seizures. *Id.* ¶ 21. While hospitalized, Norris attempted to take a detention officer's sidearm during a foiled escape attempt. *Id.* ¶ 22. When questioned about the bid to escape, Norris allegedly told law enforcement that he tried to take the sidearm so that he could commit suicide. *Id.* He was soon returned to Polk County Jail and placed on suicide watch in an isolation cell. *Id.* While on suicide watch, Norris disclosed previous suicide attempts to Dr. Timothy McRae, the psychiatrist in charge of his care. *Id.* ¶ 25. McRae is an employee of Defendant Correctional Medical Services, Inc. (CMS), an independent contractor that provides medical services to inmates in Polk County. *Id.* ¶¶ 11, 12.

Detention personnel allegedly observed Norris physically harm himself and attempt suicide on multiple occasions, leading authorities to place him in restraints and extend his stint in isolation. *Id.* ¶ 22. On May 24, about two weeks after the initial escape and suicide attempts, Norris was taken off suicide watch, although he remained housed in isolation. *Id.* ¶ 24. At this time and throughout his incarceration, Norris allegedly informed detention personnel that he continued to suffer from auditory hallucinations and refused take his medication. *Id.* ¶¶ 26-28.

On October 16, Norris was caught attempting to remove a razor blade from a safety razor. *Id.* ¶ 29. He allegedly informed detention personnel that he would have harmed himself with the blade had they not intervened. *Id.* This led to reinstatement of his suicide watch. *Id.* The next day, Norris unsuccessfully attempted suicide by cutting himself with a razor blade he managed to procure. *Id.* As a result, he was again placed in various restraints while on suicide watch. *Id.* ¶ 30. On October 21, McRae allegedly noted in his interdisciplinary progress notes that Norris was to remain on suicide watch. *Id.* ¶ 31.

2

The following day, October 22, McRae recommended that Norris be taken off suicide watch "per detention priorities," despite Norris allegedly telling McRae that he was upset about his family situation and that his medication was not working. *Id.* ¶ 33. Defendant Crystal Parker, a licensed practical nurse also charged with Norris' care, prepared and signed an incident report indicating that Norris' suicide watch was to be discontinued, giving "detention priorities per psychiatrist" as the reason. *Id.* ¶ 32. Pursuant to the report, Norris was removed from suicide watch on October 23. Norris hanged himself the next day in his isolation cell. *Id.* ¶ 35.

Norris is survived by his wife, Katie Stiles, who brings this suit individually and as the personal administrator of Norris' estate. *Id.* ¶ 1. Stiles alleges that Sheriff Judd promulgates specific regulations governing the administration of the jail, including the manner in which suicidal and mentally ill inmates are incarcerated. *Id.* ¶ 37. The regulations provide that suicidal inmates may be taken off suicide watch when medically cleared by the medical health facility. *Id.* ¶ 39. She further alleges that suicidal inmates should not be housed in isolation cells unless they are kept under constant supervision and care. *Id.* ¶ 42.

### B.     Procedural Background

Stiles filed the initial complaint in this case on October 19, 2012. Dkt. 1. After Defendants filed motions to dismiss (Dkts. 4, 6), Stiles amended the complaint as of right. *See* Dkt. 8. CMS, McRae, and Parker answered the First Amended Complaint, but the remaining Defendants again moved to dismiss. Dkts. 24, 25. While the motion to dismiss was pending, Stiles moved for leave to amend her complaint. Dkt. 37. The motion was granted (Dkt. 40), and Stiles filed the Second Amended Complaint. Dkt. 41. After review, the Second Amended Complaint was *sua sponte* stricken as a shotgun pleading (Dkt. 49) because it included lengthy and unnecessary recitation of

factual detail, incorporated all preceding paragraphs into each count, and lumped together multiple claims against multiple defendants. *Id.* Stiles was granted leave to file a Third Amended Complaint, which she did on May 20, 2013. Dkt. 51. Stiles then moved, with the consent of Defendants, for leave to file a Fourth Amended Complaint. Dkt. 53. The motion was granted (Dkt. 54), and the Fourth Amended Complaint (Dkt. 55) is currently pending.

In her fifth version of the complaint, Stiles brings twelve claims against eleven defendants. Counts I through IV are Eighth Amendment claims brought under 42 U.S.C. § 1983. Count I is brought against Sheriff Judd. Count II is against CMS. Count III is against Defendants Burke, Wulf, Palmer, Daughtry, McIntosh, Mizell, and Rayburn. And Count IV is brought against Parker and McRae. Count V is a § 1983 claim against Sheriff Judd for violations of Norris' right to procedural due process under the Fourteenth Amendment. Count VI alleges that Sheriff Judd violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213. Counts VII through IX are state law wrongful death claims against Sheriff Judd, Parker, and Dr. McRae, respectively, brought under the Florida Wrongful Death Act, §§ 768.16-768.26, *Florida Statutes*. Counts X and XI allege vicarious liability on the part of CMS for the actions of Parker and Dr. McRae leading to the wrongful death of Norris. And Count XII is a wrongful death claim against CMS.

## II.    STANDARD

A complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This rule does not require detailed factual allegations, but it demands more than an unadorned, conclusory accusation of harm. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must "plead all facts establishing an entitlement to relief with more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause

of action.'" *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

     "The complaint must contain enough facts to make a claim for relief plausible on its face." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd sub nom. Ashcroft v. Iqbal*, 556 U.S. 672 (2009)). Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. *Id.*

     Although it is axiomatic that the Court must accept as true all of the allegations contained in the complaint, this tenet is "inapplicable to legal conclusions." *Id.* at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. All reasonable inferences must be drawn in the plaintiff's favor. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

III.   **DISCUSSION**

A.    <u>**The Fourth Amended Complaint Is Not a Shotgun Pleading.**</u>

Initially, Defendants argue that the Fourth Amended Complaint should be stricken in its entirety because it is a shotgun pleading. This argument is unpersuasive. The Fourth Amended Complaint adequately separates distinct claims against Defendants into separate counts, incorporating only those preliminary allegations necessary to support the specific cause of action alleged in that count. Moreover, the Fourth Amended Complaint adequately puts Defendants on fair notice of the individualized claims against them.

B.    <u>**Counts I, II, III & IV - Eighth Amendment Claims Brought under § 1983.**</u>

*1.    Introduction*

In Counts I through IV, Stiles alleges that Defendants violated Norris' Eighth Amendment right to be free from cruel and unusual punishment, as incorporated through the Fourteenth Amendment,[3] by acting with deliberate indifference to Norris' serious medical needs. Stiles is also suing Sheriff Judd in his official capacity as Polk County Sheriff. Dkt. 55 ¶ 2. Defendants argue that Counts I and III should be dismissed because (1) Stiles fails to allege deliberate indifference to a serious medical need; (2) Stiles fails to allege the personal involvement of Sheriff Judd and Defendants Burke, Wulf, Daughtry, McIntosh, Mizell, and Rayburn; and (3) Defendants are entitled to qualified immunity. Defendants further argue that even if Stiles sufficiently alleges an Eighth Amendment violation, the claims against Sheriff Judd in his official capacity should be dismissed

---

[3] "The eighth amendment proscribes the imposition of 'cruel and unusual punishments.' U.S. Const. amend. VIII. This proscription applies to the states through the fourteenth amendment. [*Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463 (1947)]. For convenience, we treat appellees' claim as having been brought under the eighth amendment." *Greason v. Kemp*, 891 F.2d 829, 831 n.2 (11th Cir. 1990).

because Stiles fails to allege that a custom or policy was the moving force behind the constitutional violation.

### 2.    Eighth Amendment Deliberate Indifference Claims

"In order to prevail on a civil rights action under § 1983, a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). A § 1983 claim for a violation of the Eighth Amendment arises when prison officials act with deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).

"To prevail on a deliberate indifference to serious medical need claim, [a plaintiff] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). With regard to the first prong, a "serious medical need" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* at 1307 (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)). In general, serious medical needs are those "requiring immediate medical attention." *Hill*, 40 F.3d at 1190.

To meet the second prong of deliberate indifference, a plaintiff must allege that the defendant (1) had "subjective knowledge of a risk of serious harm, (2) disregard[ed] that risk, and (3) [engaged in] conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). In other words, "liability may be imposed for deliberate indifference only if the plaintiff proves the defendant actually knew of an excessive risk to inmate health or safety and disregarded

7

that risk." *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (internal quotations omitted). Allegations that the defendant should have perceived the risk, but did not, are insufficient. *Id.*

### 3.   *Counts II & IV*

Defendants CMS, McRae, and Parker first argue that Counts II and IV should be dismissed because they are shotgun claims pleaded in a manner that contravenes Federal Rule of Civil Procedure 8(a). *See* Dkt. 58 at 3. This contention lacks merit, as previously discussed. Defendants have not argued for dismissal of Counts II or IV on any other basis. Stiles therefore states actionable claims in Counts II and IV.

### 4.   *Count III*

In Count III, Stiles appears to allege an Eighth Amendment claim against Defendants Burke, Wulf, Palmer, Daughtry, McIntosh, Mizell, and Rayburn.[4] This Count contains only legal conclusions, and none of the allegations incorporated into Count III contain any factual detail describing any personal participation or involvement in Norris' care or detention by Defendants Burke, Wulf, Palmer, Daughtry, McIntosh, Mizell, or Rayburn.[5] Moreover, the Fourth Amended Complaint does not contain any allegations that these Defendants had "subjective knowledge of a risk of serious harm" to Norris or that they engaged in any conduct related to the treatment of Norris' alleged serious medical need. *Brown*, 387 F.3d at 1351. Count III is therefore due to be dismissed. *See Resnick*, 693 F.3d at 1324.

---

[4] Count III is not labeled as an Eighth Amendment claim, but the allegation that these Defendants "acted with deliberate indifference and failed to provide Decedent with the necessary medical care" clarifies that this is an Eighth Amendment deliberate indifference claim. Dkt. 55 ¶ 66.

[5] Only once is one of these Defendants mentioned. In Paragraph 32, Stiles alleges that a fax directing that Norris' suicide watch be discontinued and Norris returned to inmate housing was "sworn" by Wulf. This single allegation "'stops short of the line between possibility and plausibility of entitlement to relief,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557), and fails to state a cause of action under § 1983.

### 5.   *Count I - Against Sheriff Judd Individually*

Stiles does not state a claim against Sheriff Judd individually because the Fourth Amended Complaint includes no allegations demonstrating the plausibility of Sheriff Judd having "subjective knowledge of a risk" of serious harm to Norris. *See Twombly*, 550 U.S. at 567 (dismissing claims that were not plausible).

### 6.   *Count I - Against Sheriff Judd in his Official Capacity*

Sheriff Judd may be held liable in his official capacity if the alleged constitutional violations resulted from the execution of a policy or custom of the governmental entity. *See Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). The policy or custom must be the "moving force" behind the constitutional deprivation. *Id.*; *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). A single incident of an unconstitutional violation is insufficient to impose liability on a governmental entity. *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011). Rather, the plaintiff must allege a "pattern of similar constitutional violations." *Id.* The question in assessing the sufficiency of allegations concerning § 1983 official capacity claims is whether the plaintiff alleges that "the Sheriff's Department 'had established customs and policies that resulted in deliberate indifference to constitutional violations.'" *Goodman v. Kimbrough*, 718 F.3d 1325, 1335 (11th Cir. 2013) (quoting *Mathews v. Crosby*, 480 F.3d 1265, 1274 (11th Cir. 2007)). Stiles' allegations meet this standard.

Stiles alleges that Norris was taken off suicide watch and returned to inmate housing by McRae pursuant to "detention priorities." Dkt. 55 ¶ 33. Taken in the light most favorable to Stiles, this allegation implies that McRae's decision to remove Norris from suicide watch was made pursuant to regular detention policies promulgated by Sheriff Judd. Moreover, Stiles alleges that

Polk County Jail regulations allow suicidal inmates to be taken off suicide watch after the medical

health facility "certifies" that the inmate is "medically cleared." Dkt. 55 ¶ 39. After they are taken

off suicide watch, suicidal inmates are placed into an "appropriate housing area," which may include

isolation cells,[6] where they are not under constant supervision. *Id.*   ¶¶ 40-41. Housing suicidal

inmates in isolation cells allegedly creates a higher risk for suicide unless they are kept under

constant supervision. *Id.* ¶ 42. Taken in the light most favorable to Stiles and assuming their truth,

these allegations sufficiently allege that a policy of Sheriff Judd that was the "moving force" behind

the Eighth Amendment violations allegedly committed by CMS, McRae, and Parker. Count I

therefore states a § 1983 claim against Sheriff Judd in his official capacity.[7]

C.   **Count V - Fourteenth Amendment Procedural Due Process Claim Against Sheriff Judd.**[8]

Count V alleges that Sheriff Judd violated Norris' Fourteenth Amendment right to procedural

due process by placing him into isolation for an atypical period of time without a hearing or periodic

administrative review while Norris suffered from mental illness. Initially, Count V is due to be

dismissed against Sheriff Judd in his individual capacity because the claim contains no personalized

allegations concerning the conduct of Sheriff Judd related to Norris' incarceration. *See* Dkt. 55 ¶ 80

---

[6]The inference that suicidal inmates who have been medically cleared are housed in isolation cells without constant supervision may be drawn from the allegations in Paragraphs 39-42, when taken in the light most favorable to Stiles.

[7]Because only the official capacity claims remain against Sheriff Judd, the question of qualified immunity need not be addressed as to Sheriff Judd. *See Bruce v. Beary*, 498 F.3d 1232, 1249 n.33 (11th Cir. 2007) (explaining that the defense of qualified immunity is inapplicable to official capacity claims). Additionally, CMS, McRae, and Parker have not raised the defense of qualified immunity and it therefore need not be addressed as to Counts II and IV.

[8]Although Stiles alleges that Norris was held as both a pretrial detainee and an inmate (Dkt. 55 ¶ 19), her procedural due process claim applies to Norris as an inmate, rather than a pretrial detainee. *See Goodman*, 718 F.3d at 1331 n.1 (discussing differing constitutional grounds for "deliberate indifference" claims brought by pretrial detainees as opposed to inmates serving a sentence); Dkt. 55 ¶ 82 ("[T]he placement of [Norris] in an isolation cell . . . was atypical and deprived [Norris] of a liberty interest . . . ."); *id.* ("[T]he return of [Norris] to isolation . . . without an opportunity to return to general inmate housing violated [Norris'] right to procedural due process . . . .").

(Norris "was, *through the policies and practices of Sheriff Grady Judd*, kept in isolation for an atypical period of time without a hearing or the opportunity to present reasons as to why he should be released from jail.") (emphasis added).

For a prisoner to invoke procedural due process rights, a constitutionally protected property or liberty interest must be at stake. *See Swarthout v. Cooke*, 131 S.Ct. 859, 861 (2011); *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). A liberty interest protected by the Fourteenth Amendment may arise from the Due Process Clause itself or be created by state law. *Al-Amin v. Donald*, 165 Fed. Appx. 733, 738 (11th Cir. 2006) (citing *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995)). Accordingly, there are two situations in which a prisoner can be deprived of a protected liberty interest such that due process is required. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005).

"The first is when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court." *Kirby v. Siegelman*, 195 F.3d 1285, 1291 (11th Cir. 1999); *see Sandin*, 515 U.S. at 484 (Due process is implicated where the conditions of confinement "exceed the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force."). The second "is when the state has consistently bestowed a certain benefit to prisoners, usually through statute or administrative policy, and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Kirby*, 195 F.3d at 1291 (quoting *Sandin*, 515 U.S. at 484). The "touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of the regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson*, 545 U.S. at 233 (quoting *Sandin*, 515 U.S. at 484).

11

Under these guidelines, the Due Process Clause "does not directly protect an inmate from changes in the conditions of his confinement, as long as the condition to which the prisoner is subjected is not otherwise violative of the Constitution or outside the sentence imposed on him." *Chandler v. Baird*, 926 F.2d 1057, 1060 (11th Cir. 1991) (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Montayne v. Haymes*, 427 U.S. 236, 242 (1976)) (internal citations omitted). "Nor does the Due Process Clause itself create 'an interest in being confined to a general population cell, rather than the more austere and restrictive administrative segregation quarters.'" *Id.* (quoting *Hewitt v. Hems*, 459 U.S. 460, 466 (1983)); *see Al-Amin*, 165 Fed. Appx. at 737; *Huff v. Thaler*, No. 12-40910, 2013 WL 1609092, at *1 (5th Cir. Apr. 15, 2013) ("In the absence of extraordinary circumstances, administrative segregation does not impose an atypical and significant hardship required to trigger the protections of the Due Process Clause."). Rather, "[w]hen an inmate is placed in conditions more restrictive than those in the general prison population, whether through protective segregation like suicide watch or discretionary administrative segregation, his liberty is affected only if the more restrictive conditions are particularly harsh compared to ordinary prison life or if he remains subject to those conditions for a significantly long time." *Earl v. Racine Cnty. Jail*, 718 F.3d 689, 691 (7th Cir. 2013).

Stiles makes several key allegations to support her procedural due process claim. First, she alleges that Norris was held in isolation for the duration of his incarceration of nearly six months, "an atypical period of time" to be held without administrative review. *See* Dkt. 55 ¶¶ 19, 24, 35, 80. Not only is the isolation alleged to have been "atypical," Stiles also alleges that Norris was placed in isolation in violation of the "regulatory requirement" that prisoners be placed in "appropriate housing." *Id.* ¶ 81. The six-month isolated confinement ended only because Norris committed

12

suicide. Drawing all inferences in favor of Stiles, Norris' assignment to isolation was indefinite and "placed him at an increased risk of suicide and self-destructive behavior." *Id.* ¶ 80.

Accepting these allegations as true, Stiles has adequately pled that Norris' confinement imposed an atypical and significant hardship sufficient to implicate a liberty interest protected by the Due Process Clause. Allegations of continuous and indefinite confinement in isolation for six months without administrative review adequately pleads a procedural due process claim to survive a motion to dismiss. *See, e.g., Marion v. Columbia Correction Inst.*, 559 F.3d 693, 698 (7th Cir. 2009) (discussing cases in which development of the factual record was required to determine whether confinement in segregation for six months implicated a due process liberty interest); *Palmer v. Richards*, 364 F.3d 60, 65-66 (2d Cir. 2004) (holding that allegations of 77 days in isolated confinement necessitate further review and do not warrant dismissal); *Mitchell v. Horn*, 318 F.3d 523, 527, 532-33 (3d Cir. 2003) (remanding the dismissal of a claim of 90 days' segregation "given the fact-intensive inquiry implied by *Sandin*"); *Gaines v. Stenseng*, 292 F.3d 1222, 1225-26 (10th Cir. 2002) (reversing dismissal of a claim involving 75 days' segregation); *Hatch v. Dist. of Columbia*, 184 F.3d 846, 857-58 (D.C. Cir. 1999) (requiring additional factual development for seven-months of segregation). Coupled with the allegation that confinement in isolation was harmful to Norris given his mental state, Stiles has sufficiently alleged that Norris' confinement implicated a liberty interest that could not be curtailed without due process. *See Marion*, 559 F.3d at 698 (noting that "both the duration *and* the conditions of the segregation must be considered in the due process analysis").

Count V further alleges that the conditions leading to an atypical and significant hardship resulted from the execution of a policy promulgated by Sheriff Judd, namely the indefinite isolation

of prisoners with mental health issues and at risk of suicide. The allegations establish that this policy was the "moving force" behind the constitutional deprivation alleged, allowing Norris to adequately state a procedural due process claim against Sheriff Judd in his official capacity. *Monell*, 436 U.S. at 694.

**D.    Count VI - ADA Claim Against Sheriff Judd**

Stiles alleges that Sheriff Judd, in his official capacity, violated the Americans with Disabilities Act by placing Norris in isolation and restraints for extended periods of time after Norris expressed suicidal tendencies. *See* Dkt. 59 at 12. Sheriff Judd argues that this claim must be dismissed because Norris was not "disabled" under the ADA and because Stiles fails to allege any discriminatory actions taken by Sheriff Judd.

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.[9] To state a *prima facie* claim under Title II of the ADA, a plaintiff must allege "(1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by

---

[9] The Polk County Sheriff's Office is a "public entity" within the definition of the ADA. *See* 42 U.S.C. § 12131(1)(B). And Title II of the ADA covers inmates in state prisons. *Pa. Dep't of Corrections v. Yeskey*, 524 U.S. 206, 209 (1998); *Ganstine v. Sec., Fla. Dep't of Corrections*, 502 Fed. Appx. 905, 909 (11th Cir. 2012). Likewise, Stiles sufficiently alleges that Norris was a "qualified individual." *See* § 12131(2) ("The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.").

14

reason of the plaintiff's disability." *Am. Ass'n of People with Disabilities v. Harris*, 647 F.3d 1093, 1101 (11th Cir. 2011); *Mack v. City of High Springs*, 486 Fed. Appx. 3, 7 (11th Cir. 2012).

A disability is "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). The ADA defines "major life activities" to include, but not be limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). The term "disability" is construed "in favor of broad coverage of individuals," and an impairment that is "episodic or in remission is a disability if it would substantially limit a major life activity when active." *Id.* §§ 12102(4)(A), 12102(4)(D).

"Physical or mental impairment[s]" that qualify as disabilities under the ADA include "any mental or psychological disorder, such as . . . emotional or mental illness." 29 C.F.R. § 1630.2(h)(2). Some emotional or mental illnesses, such as "major depressive disorder, bipolar disorder, post-traumatic stress disorder, obsessive compulsive disorder, and schizophrenia[,] substantially limit brain function." 29 C.F.R. § 1630.2(j)(3)(iii). Accordingly, "it should easily be concluded" that an impairment in the form of an emotional or mental illness listed in § 1630.2(j)(3)(iii) "will, at a minimum, substantially limit . . . major life activities." *Id.*

The Fourth Amended Complaint alleges that Norris was suicidal, clinically depressed, bipolar, was on psychiatric mediation, and had a history of auditory hallucinations. Dkt. 55 ¶¶ 20, 87. Paired with these allegations, § 1630.2(j)(3)(iii) creates a presumption of impairment and "it should be easily concluded" that Norris' clinically depressed and bipolar states substantially limited

his participation in major life activities. Stiles has therefore sufficiently alleged that Norris suffered from a "disability" that satisfies the first prong of an ADA claim.

Having met the first prong of a Title II ADA claim, Stiles must also allege that Norris was discriminated against by Sheriff Judd, and that the discrimination was on account of his disability. To meet those elements, Stiles alleges that Sheriff Judd "acted intentionally and/or with deliberate indifference to [Norris'] need for reasonable accommodations" by (1) placing him in isolation even though it exacerbated Norris' disability, (2) using restraints for extended periods of time even though it exacerbated Norris' disability, and (3) allowing Norris to be transferred off suicide watch while in isolation, where he had the opportunity to commit suicide. Dkt. 55 ¶ 95. Although Stiles argues that the ADA claim should be read as alleging that Norris was placed in isolation and restraints *due to* his disability, the allegations of the Fourth Amended Complaint, even read in the light most favorable to Stiles, do not allow that inference. There simply are no allegations in Count VI or elsewhere in the Fourth Amended Complaint supporting Stiles' contention that Norris was discriminated against because of his mental illness. At most, the allegations are cumulative of the Eighth Amendment deliberate indifference claim stated in Count I.[10] Count VI is therefore due to be dismissed.

### E.     Counts VII through XII - Wrongful Death Claims.

In the remaining claims, Counts VII through XII, Stiles alleges Florida state law wrongful death claims against Sheriff Judd in his official capacity,[11] Parker and McRae in their individual

---

[10]Even if Count VI could be read to suggest that Sheriff Judd discriminated against Norris by placing him in isolation (which it is not), the allegations stop short of the level of plausibility required by *Twombly* and *Iqbal*. *See Twombly*, 550 U.S. at 556-57.

[11]Although Stiles indicates that Sheriff Judd is sued in his official and individual capacity in all claims (Dkt. 55 ¶ 2), Count VII appears to only state a claim against Sheriff Judd in his official capacity. *See* Dkt. 55 ¶ 105 ("[Norris] suffered wrongful death by virtue of the Defendant Judd's actions, practices, and policies in this regard."); Dkt. 59 at

capacities, CMS for its vicarious liability for the torts of Parker and McRae, and CMS for its supervisory liability. Parker, McRae, and CMS do not move to dismiss the wrongful death claims against them. Sheriff Judd, however, argues that Count VII must be dismissed because it is an action for damages that is barred by sovereign immunity.

In negligence actions, assuming that a duty is owed by the defendant, sovereign immunity may bar an action for the alleged breach of that duty. *Pollock v. Fla. Dep't of Highway Patrol*, 882 So. 2d 928, 933 (Fla. 2004). "[B]asic judgmental or discretionary governmental functions are immune from legal action, whereas operational acts are not protected by sovereign immunity." *Id.* A discretionary function "is one in which the challenged governmental act involved an exercise of executive or legislative power such that the Court would inappropriately entangle itself in fundamental questions of policy and planning were it to entertain the plaintiff's tort claim." *Rolle v. Brevard Cnty., Fla.*, No. 6:06-cv-714-ORL-19JGG, 2007 WL 328682, at *9 (M.D. Fla. Jan. 31, 2007) (citing *Henderson v. Bowden*, 737 So. 2d 532, 538 (Fla. 1999)). "An 'operational' function, on the other hand, is one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented." *Henderson*, 737 So. 2d at 538.

The "operation and maintenance" of prisons is a discretionary function of the sheriff, as an independent officer under the Florida Constitution. *See White v. Palm Beach Cnty.*, 404 So. 2d 123,

---

14 n.4 ("Plaintiff is not alleging a wrongful death claim against Sheriff Judd in his individual capacity."). Even if Stiles attempts to state a claim against Sheriff Judd in his individual capacity, that claim fails for two reasons. First, the Fourth Amended Complaint contains no allegations that Sheriff Judd took any actions, personally, that led to the wrongful death of Norris. Second, even if Count VII successfully alleges Sheriff Judd's personal involvement in the wrongful death, the claim is barred by § 768.28(9)(a), *Florida Statutes*, which provides that no officer of the state "shall be held personally liable in tort . . . for any injury . . . suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer . . . acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."

17

125 (Fla. 4th DCA 1981); *Rolle*, 2007 WL 328682 at *9. One function of operating and maintaining prisons is the classification and placement of inmates within the prison system, which generally "constitutes a discretionary planning level function." *Davis v. State of Fla., Dep't of Corrections*, 460 So. 2d 452, 453 (Fla. 1st DCA 1984). Nevertheless, the Florida Supreme Court has held that assigning detainees to particular locations in a detention facility where they are foreseeably exposed to danger can be an operational level act not protected by sovereign immunity. *See Dep't of Health & Rehabilitative Servs. v. Whaley*, 574 So. 2d 100, 104 (Fla. 1991). Sheriff Judd's entitlement to sovereign immunity therefore depends on whether Stiles' claims are based on the Sheriff's general policies concerning classification and placement of inmates within the prison system or the decision to assign Norris to a location in the prison where he foreseeably faced danger by his own hand.

This determination is ultimately one of fact. The allegations of breach (*see* Dkt. 55 ¶ 102), when taken in the light most favorable to Stiles, may constitute actions that were operational in nature, rather than resulting from discretionary policy decisions by Sheriff Judd. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1121-22 (11th Cir. 2005) (reviewing cases in which Florida's intermediate courts of appeal found summary judgment for the constitutional officer or municipality inappropriate on negligence claims arising out of prisoner suicide). Because the affirmative defense of sovereign immunity does not appear plainly on the face of the Fourth Amended Complaint, dismissal is not appropriate. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) ("A complaint may be dismissed if an affirmative defense . . . appears on the face of the complaint.") (citing *Jones v. Bock*, 549 U.S. 199, 214-15 (2007)).

**F.      Motion for More Definite Statement as to Norris' Survivors.**

CMS, Parker, and McRae move for a more definite statement of the allegations concerning the children of Norris. They argue that Stiles' use of the word "children" in paragraphs 113, 122, 136, 150, and 158 is confusing because Stiles identifies only one child, Michael Norris, in the first paragraph of the Fourth Amended Complaint. For her part, Stiles concedes that Norris has only one child.

A more definite statement is appropriate where a complaint "is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The allegations concerning Norris' child are not "so vague or ambiguous" that a more definite statement is necessary. Even without Stiles' concession that Norris is survived by only one son, a reasonable reading of the Fourth Amended Complaint leads to the conclusion that Norris is survived by only one child. The motion for more definite statement is therefore due to be denied.

**G.      Motion to Strike References to "Personal Injury" in Wrongful Death Claims.**

Finally, CMS, Parker, and McRae move to strike Stiles' references to "personal injury" and attorneys' fees in the wrongful death claims asserted in the Fourth Amended Complaint. Stiles has no objection to striking these references and proposes revised language for the Fourth Amended Complaint. The references to "personal injury" in Paragraphs 113, 122, 136, 150, and 158,[12] as well as the references to attorneys' fees in Counts VIII through XII will be stricken from the Fourth Amended Complaint.

---

[12]Paragraph 158 is misnumbered as "105."

Accordingly,

1) Defendants', Sheriff Grady Judd, etc., Motion to Dismiss Fourth Amended Complaint (Dkt. 56) is GRANTED *in part* and DENIED *in part*, as follows:

      a. Count III is DISMISSED *without prejudice*.

      b. Count I is DISMISSED *without prejudice* as to Sheriff Judd in his individual capacity *only*. Count I survives as a claim against Sheriff Judd in his official capacity.

      c. Count V is DISMISSED *without prejudice* as to Sheriff Judd in his individual capacity *only*. Count V survives as a claim against Sheriff Judd in his official capacity.

      d. Count VI is DISMISSED *without prejudice*.

      e. In all other respects, the motion (Dkt. 56) is DENIED.

2) Defendant, Correctional Medical Services, Inc., Crystal Parker, and Timothy McRae, M.D.'s Motion to Dismiss Plaintiff's Fourth Amended Complaint (Dkt. 58) is GRANTED *in part* and DENIED *in part*, as follows:

      a. References to "personal injury" and attorneys' fees in Counts VIII through XII are STRICKEN.

      b. In all other respects, the motion (Dkt. 58) is DENIED.

3) Defendants Judd, CMS, Parker, and McRae shall file an answer to the Fourth Amended Complaint within **fourteen (14) days** of the date of this order.

4) Plaintiff is GRANTED leave to file a fifth amended complaint within **fourteen (14) days** of the date of this order. Failure to state claims in the fifth amended complaint or failure to comply with this Order will result in dismissal with prejudice. Should Plaintiff choose not to file a fifth

amended complaint, the remaining defendants shall answer the Fourth Amended Complaint within

**twenty-eight (28) days** of the date of this Order.

**DONE AND ORDERED** this ___29th___ day of August, 2013.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

21