UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Katie Stiles, individually and as
personal administrator of the
Estate of Bradley L. Norris, deceased,

                    Plaintiff,

v.                                                      Case No. 8:12-cv-2375-T-27EAJ

Sheriff Grady Judd, Sheriff of
Polk County, Florida;
Crystal Parker;
Correctional Medical Services, Inc.,
(n/k/a Corizon, Inc.) a Missouri corporation;
and
Timothy M. McRae, M.D.,

                    Defendants.

## FIFTH AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW plaintiff Katie Stiles ("Plaintiff"), personal administrator of the Estate of

Bradley L. Norris, deceased, by and through her undersigned counsel and pursuant to Court's

Order dated August 30, 2013 (Dkt. 56), files this Fifth Amended Complaint against defendants

Sheriff Grady Judd, Crystal Parker, Correctional Medical Services, Inc (n/k/a Corizon, Inc.)., and

Timothy M. McRae, M.D.[1]

## JURISDICTION AND VENUE

1.       Plaintiff is an individual resident of Polk County, Florida.   Plaintiff is the

surviving spouse and duly appointed personal representative of the Estate of Bradley L. Norris,

---

[1] Plaintiff has removed previously pled Count III against Defendants Burke, Wulf, Palmer, Daughtry, McIntosh, Mizell, and Rayburn, which the Court dismissed without prejudice. Plaintiff has re-pled Count VI, the American with Disabilities Act claim, which was also previously dismissed without prejudice.

deceased.  Plaintiff was survived by one child, his son, M██████ N████, DOB ████/2010. Decedent Bradley L. Norris ("<u>Decedent</u>") was a resident of Polk County, Florida at the time of his death.  Decedent was also survived by his father, Richard Norris.  Richard Norris is a resident of Polk County, Florida.

2.      Sheriff Grady Judd is an individual resident of Polk County, Florida who may be served with process at 1891 Jim Keene Blvd., Winter Haven, FL 33880-8010. Sherriff Grady Judd is sued in his capacity as Sherriff of Polk County.

3.      Crystal Parker is an individual resident of Polk County, Florida who may be served with process at 1891 Jim Keene Blvd., Winter Haven, FL 33880-8010. Crystal is sued in her individual capacity and as an employee and/or agent of Correctional Medical Services, Inc. (n/k/a Corizon, Inc.).

4.      Correctional Medical Services, Inc. (n/k/a Corizon, Inc.) ("CMS") is a Missouri corporation which may be served with process through its resident agent CT Corporation System at its registered office of 1200 S. Pine Island Road, Plantation, FL 33324.  CMS provides medical services to inmates in Polk County, Florida jails and detention centers pursuant to a contract with Sheriff Grady Judd, and operates under the color of state law in doing so.

5.      Dr. Timothy M. McRae, M.D. is an individual resident of Polk County, Florida who may be served with process at 706 S. Moody Ave., Tampa, FL 33609.  Dr. McRae is an employee of CMS and, by virtue of his employment with CMS and CMS' contract with Sheriff Grady Judd, operates under color of state law when providing medical services to inmates.  Dr. McRae is sued in his individual capacity as an employee and/or agent of CMS.

6.      This is a civil rights case and a tort case.

2

7.     The Court has jurisdiction over the subject matter of the civil rights and discrimination claims under 28 U.S.C. § 1331 as these claims arise under the Constitution, laws, and treaties of the United States.  The action arises under the Constitution of the United States, 42 U.S.C. § 1983, and 28 U.S.C. § 1343 because two of Plaintiff's claims are based on violations of the 8th and 14th Amendments of the United States Constitution.  The action also arises under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.*, federal laws which protect disabled individuals such as the Decedent in this case from discrimination.

8.     The Court has jurisdiction over Plaintiff's state law negligence and wrongful death claims under 28 U.S.C. 1367(a) because the claim involves the same facts as the constitutional and federal claims and is so related to those claims that it forms part of the same case and controversy.

9.     All relevant facts occurred in Polk County, Florida, which is in the Middle District of Florida.  Venue is proper in the Tampa Division of the United States District Court for the Middle District of Florida.

10.     This is an action for damages which exceed $15,000.00, exclusive of costs and attorney's fees.

## STATUTES OF LIMITATIONS

11.     Plaintiff alleges unconstitutional, unlawful, and tortious conduct by Defendants. The conduct which gave rise to Plaintiff's claims occurred on or about October 23, 2010. Decedent died as a result of a suicide attempt on November 3, 2010.  The case is timely filed and within the relevant statute of limitations for violations of 42 U.S.C. § 1983, 29 U.S.C. § 794(a),

42 U.S.C. § 12131, and personal injury actions under the laws of the State of Florida, Fl. Stat. § 95.11(3)(P).

FACTS COMMON TO ALL COUNTS

12.    On May 1, 2010, Decedent was arrested by the Auburndale, Florida police department and booked into a jail operated by Sheriff Grady Judd and his administration (the "Polk County Jail"). Decedent's arrest was for, among other things, violation of probation. Upon information and belief, Decedent was held as a pretrial detainee on certain charges and as an inmate serving time for previous charges for which he had received probation.

13.    Decedent was given a physical when he was first incarcerated. At or about the time of the physical, Decedent disclosed and/or it was discovered by intake and medical personnel that he had been diagnosed as clinically depressed, was bipolar, was on psychiatric medication, and had a history of auditory hallucinations.

14.    On May 8, 2010, Decedent was transferred to Lake Wales Medical Center to be treated for seizures.

15.    On May 10, 2010, Decedent was in the custody of a detention officer while being treated for seizures. He attempted to escape from the detention officer and, during the escape attempt, tried to take the officer's sidearm. When later asked why he tried to obtain the sidearm, Decedent answered that he intended to kill himself with it because he had nothing left to live for. He was returned to the Polk County Jail and placed on suicide watch in an isolation cell.

16.    On May 11, 2010, while on suicide watch, Decedent was observed writing on the walls of his isolation cell with his own blood. The blood came from cuts Decedent made on his own arms with sharp rocks. Decedent also attempted to drown himself in the water of the toilet in his cell. Decedent was placed in restraints during this time.

4

17.     Decedent was taken off suicide watch on May 24, 2010. After being taken off suicide watch, Decedent was placed in an isolation cell. He was housed in an isolation cell for the remainder of his incarceration at Polk County Jail.

18.     While he was on suicide watch, Decedent disclosed to Dr. Timothy McRae, a CMS employee and the psychiatrist in charge of Decedent's care, that he had previously attempted to commit suicide on two separate occasions – once by self-hanging and once by cutting his wrists.

19.     Decedent told Dr. McRae that at the time of the incident at Lake Wales Medical Center that he was suffering from auditory hallucinations. He also said in a May 28, 2010 check up with prison medical personnel that he was still suffering from auditory hallucinations.

20.     Frequently during the course of his incarceration at the Polk County Jail, Decedent refused to take the medications prescribed to him for his mental illness. Decedent told medical and jail personnel that the medication he was being given was not working.

21.     On October 11, 2010 Decedent punched the wall of his cell with his fist and had to be treated for a suspected broken hand.

22.     On October 16, 2010 Decedent was taken to medical personnel due to suicidal actions and statements. He was caught attempting to remove a razor blade from a safety razor and indicated that he would have "sliced himself up" with the blade if detention personnel had not caught him. He was again placed on suicide watch in an isolation cell.

23.     On October 17, 2010, Decedent attempted to commit suicide by cutting his wrists and forearms with a razor blade. He was kept on suicide watch and placed in three and four point restraints, including a restraint chair and bed shackle. Decedent advised medical personnel that he was still suffering from auditory hallucinations. He refused his medication because he

said his pills were not working. He indicated that he wanted to try different types of medication to see if they might be more effective in controlling his condition.

24.     On October 21, 2010, defendant Dr. Timothy McRae indicated in his interdisciplinary progress notes that Decedent was to "remain on" suicide watch.

25.     On October 21, 2010, defendant Crystal Parker, a licensed practical nurse and, upon information and belief, an employee of Sheriff Grady Judd, prepared and signed an incident report dated October 21, 2010. The incident report states that Decedent's suicide watch is to be discontinued and that Decedent is to be returned to inmate housing "per detention priorities per psychiatrist." The fax is "sworn" by Sgt. MB Wulf, whose signature is also dated October 21, 2010.

26.     On October 22, 2010, Decedent was evaluated by Dr. McRae. According to Dr. McRae's progress note, Decedent said that he was upset about his family situation and told CMS that his meds were not working. Nonetheless, a note on Dr. McRae's psychiatric progress note states that Decedent was to be taken off suicide watch and returned to inmate housing "per detention priorities."

27.     On October 23, 2010, Decedent was removed from suicide watch but kept in an isolation cell.

28.     On October 24, 2010, Decedent was discovered to have hanged himself with a bed sheet in the isolation cell where he was being held. Decedent was treated by jail personnel and first responders and then transported by ambulance to Lake Wales Medical Center.

29.     At Lake Wales Medical Center the doctors treating Decedent determined that Decedent had sustained significant brain damage as a result of the suicide attempt. Decedent was kept alive on life support until November 3, 2010, when he died of the injuries he sustained

as a result of the suicide attempt. Decedent's death was proximately caused by Defendants' actions as set forth herein.

30.     Sheriff Judd promulgates regulations which govern the administration of the Polk County Jail and the conduct of its officers and personnel, as well as the care to be provided to and the manner of incarceration of mentally ill and suicidal inmates. These regulations were in effect during the period that Decedent was incarcerated.

31.     The regulations provide that suicidal inmates are to be placed on suicide watch where they are given constant supervision, seen on a periodic basis by mental health professionals. Suicidal inmates are to be provided with access to mental health professionals upon request.

32.     The regulations provide that inmates may only be taken off suicide watch when the medical health facility "certifies" that the inmate is "medically cleared" to be removed from "suicidal housing." After the suicidal inmate is "medically cleared," the inmate is to be placed into an "appropriate housing area."

33.     During the period of his incarceration, Decedent was having difficulty with the medication prescribed for his depression and bipolar conditions. He advised Dr. McRae that the medication he was being given was not working and refused to take his medication a number of times.

34.     Except when placed on suicide watch, inmates who are housed in isolation cells at the Polk County Jail are not under constant supervision.

35.     Inmates who suffer from mental illness should not be housed in isolation cells unless they are, during the period of their isolation, kept under constant supervision and

psychiatric care. Isolation has detrimental and destabilizing effects on such inmates and places them at higher risk for suicide and self-destructive behavior.

COUNT I – 42 U.S.C. 1983
<u>CLAIMS AGAINST SHERRIFF JUDD IN HIS OFFICIAL CAPACITY</u>

36.     The factual allegations set forth in paragraphs 12-35 are incorporated by reference herein.

37.     Under the 8th and 14th Amendments of the United States Constitution, Decedent had a constitutional right to be free from cruel and unusual punishment during the period of his incarceration and detention. This constitutional right was clearly established at the time of Decedent's incarceration.

38.     During his incarceration, Decedent had a serious medical need for mental health treatment. This treatment included a need not to be housed in isolation which exacerbated his mental health problems and gave him the means and opportunity to attempt to harm himself. This treatment also included a need not to be placed in restraints for extended periods of time which exacerbated his mental heath problems.

39.     Decedent's serious medical need had been diagnosed by a physician as requiring treatment and/or was so obvious that even a lay person would easily recognize the necessity for prompt medical attention.

40.     Sheriff Grady Judd maintained a custom or policy of allowing mentally ill inmates to be housed in isolation cells; of allowing mentally ill inmates to be placed in restraints for extended periods of time; and of allowing inmates to be moved from suicide watch to isolation cells

41.     Defendant Judd was aware of Decedent's serious medical need and acted with deliberate indifference to that need.

8

42.     Defendant Judd acted "under color" of state law as set forth herein.

43.     Defendant Judd's acts were the proximate and/or legal cause of damages sustained by the Estate.

44.     Decedent suffered constitutional injury, personal injury, mental anguish, hardship and wrongful death by virtue of Defendant Judd's actions, practices and policies in this regard. Plaintiff sustained and continues to sustain damages for past and future loss of support, services, companionship and protection and mental pain and suffering.  Decedent's child sustained and continues to sustain damages for lost parental companionship, instruction, and guidance and for mental pain and suffering.  In addition, Plaintiff seeks damages as personal representative for past and future medical and funeral expenses and lost earnings.

WHEREFORE, the Plaintiff requests judgment against Defendant Judd for all damages allowed by law, including punitive damages, attorneys' fees, costs, and such other and further relief as the Court deems just and equitable.

COUNT II—42 U.S.C. 1983 CLAIMS AGAINST CMS

45.     The factual allegations set forth in paragraphs 12-35 are incorporated by reference herein.

46.     CMS contracted with Defendant Judd to provide for healthcare for inmates of the Polk County jail.

47.     CMS and its employees perform functions traditionally within the exclusive prerogative of the county.

48.     Under the 8th and 14th Amendments of the United States Constitution, Decedent had a constitutional right to be free from cruel and unusual punishment during the period of his

incarceration and detention. This constitutional right was clearly established at the time of Decedent's incarceration.

49.     During his incarceration, Decedent had a serious medical need for mental health treatment. This treatment included a need not to be housed in isolation which exacerbated his mental health problems and gave him the means and opportunity to attempt to harm himself. This treatment also included a need not to be placed in restraints for extended periods of time which exacerbated his mental heath problems.

50.     Decedent's serious medical need had been diagnosed by a physician as requiring treatment and/or was so obvious that even a lay person would easily recognize the necessity for prompt medical attention.

51.     CMS maintained a custom or policy of allowing seriously mentally ill inmates to be housed in isolation cells rather than transferring them to a mental hospital even though it caused their mental health to substantially deteriorate and made them suicidal; of allowing mentally ill inmates to be placed in restraints for extended periods of time even when it caused their mental health to deteriorate; and of allowing inmates to be moved from suicide watch to isolation cells

52.     CMS was aware of Decedent's serious medical need and acted with deliberate indifference to that need.

53.     CMS acted "under color" of state law as set forth herein.

54.     CMS's acts were the proximate and/or legal cause of damages sustained by the Estate.

55.     Decedent suffered constitutional injury, personal injury, mental anguish, hardship and wrongful death by virtue of CMS's actions, practices and policies in this regard.  Plaintiff

sustained and continues to sustain damages for past and future loss of support, services, companionship and protection and mental pain and suffering.  Decedent's child sustained and continues to sustain damages for lost parental companionship, instruction, and guidance and for mental pain and suffering.  In addition, Plaintiff seeks damages as personal representative for past and future medical and funeral expenses and lost earnings.

WHEREFORE, the Plaintiff requests judgment against Defendant CMS for all damages allowed by law, including punitive damages, attorneys' fees, costs, and such other and further relief as the Court deems just and equitable.

COUNT III—42 U.S.C. 1983 CLAIMS AGAINST DEFENDANTS PARKER AND MCCRAE

56.     The factual allegations set forth in paragraphs 12-35 are incorporated by reference herein.

57.     Prior to his removal from suicide watch, Defendants Parker and McRae knew that there remained a substantial risk that Decedent would attempt suicide, that Decedent's suicide was reasonably foreseeable, that the threat of this action was imminent and immediate and, upon return to the isolation cell, Decedent would have he opportunity and instruments to attempt suicide.

58.     Decedent's suicidal condition constitutes a serious medical need.

59.     Defendants Parker and McRae were subjectively aware of Decedent's serious medical need and acted with deliberate indifference to that need.

60.     Defendants Parker and McRae acted "under color" of state law.

61.     Defendant Parker and McRae's acts were the proximate and/or legal cause of damages sustained by the Estate.

11

62.     Decedent suffered constitutional injury, personal injury, mental anguish, hardship and wrongful death by virtue defendants' actions in this regard.  Plaintiff sustained and continues to sustain damages for past and future loss of support, services, companionship and protection and mental pain and suffering.  Decedent's child sustained and continues to sustain damages for lost parental companionship, instruction, and guidance and for mental pain and suffering.  In addition, Plaintiff seeks damages as personal representative for past and future medical and funeral expenses and lost earnings.

WHEREFORE, the Plaintiff requests judgment against defendants Parker and McRae for all damages allowed by law, including punitive damages attorneys' fees, costs, and such other and further relief as the Court deems just and equitable.

## COUNT IV – 42 U.S.C. 1983 – FOURTEENTH AMENDMENT CLAIMS AGAINST DEFENDANT JUDD IN HIS OFFICIAL CAPACITY

63.     The factual allegations set forth in paragraphs 12-35 are incorporated by reference herein.

64.     Following Decedent's attempted escape on May 11, 2010 and subsequent suicide watch, he was placed in an isolation cell at the Polk County Jail.  He remained in isolation until his final attempted suicide on October 24, 2010.  An overwhelming body of medical research shows that extended periods of isolation or solitary confinement causes significant mental health injuries to an inmate, especially to an inmate who is already mentally ill.  Therefore, placement in solitary confinement constitutes an additional punishment for which due process must be afforded.

65.     Decedent was placed in isolation without a hearing and without being afforded a statement of the reasons why he was being placed there.  No opportunity was afforded him to call witnesses or to present reasons why he should not be placed in isolation, and he was not

12

provided with a statement of the evidence relied upon by Sheriff Grady Judd or his administration regarding his placement in isolation.

66.   Decedent was, through the policies and practices of Sheriff Grady Judd, kept in isolation for an atypical period of time without a hearing or the opportunity to present reasons as to why he should be released from isolation. Decedent was subjected to this isolation despite the fact that isolation placed him at an increased risk of suicide and self-destructive behavior.

67.   Decedent was, after being placed on suicide watch on October 16, 2010, returned to isolation on October 23, 2010 despite the regulatory requirement that he be placed in appropriate housing. He was placed in isolation without hearing or the opportunity to review or contest the reasons for being placed in isolation.. Furthermore, Decedent was placed in isolation before the proper authorizations were obtained releasing him from suicide watch.

68.   Given his mental illness and suicidal tendencies, the placement of Decedent in an isolation cell without continuous supervision and without periodic administrative review hearings to determine whether he should be released from solitary confinement was atypical and deprived Decedent of a liberty interest and was a violation of Decedent's right to procedural due process under the 14th Amendment of the United States Constitution. Similarly, the return of Decedent to isolation on October 23, 2010 after being removed from suicide watch without an opportunity to return to general inmate housing violated Decedent's right to procedural due process, and Decedent's rights were further violated due to the failure of jail staff to properly follow release procedures.

69.   A reasonable person would have known that a mentally ill inmate posing a suicide risk should not have been placed in an isolation cell without supervision. It was foreseeable that Decedent, having a serious mental illness and being a significant suicide risk, would attempt

13

suicide if he were placed in isolation for a long period of time or returned to isolation under the circumstances present on October 23, 2010.

70.     The failure of Defendant Judd to afford Decedent the right to procedural due process caused, or contributed to, his final suicide attempt, injuries therefrom, and ultimate death.

71.     Decedent suffered constitutional injury, personal injury, mental anguish, hardship and wrongful death by virtue of the defendants' actions, practices and policies in this regard. Plaintiff sustained and continues to sustain damages for past and future loss of support, services, companionship and protection and mental pain and suffering.  Decedent's child sustained and continues to sustain damages for lost parental companionship, instruction, and guidance and for mental pain and suffering.  In addition, Plaintiff seeks damages as personal representative for past and future medical and funeral expenses and lost earnings.

WHEREFORE, the Plaintiff requests judgment against Defendant Judd  for all damages allowed by law, including punitive damages, attorneys' fees, costs, and such other and further relief as the Court deems just and equitable.

## COUNT V – WRONGFUL DEATH CLAIM AGAINST DEFENDANT JUDD

72.     The factual allegations set forth in paragraphs 12-35 are incorporated by reference herein.

73.     In the alternative, Plaintiff is entitled to relief against Defendant Judd for the negligent treatment of Decedent while incarcerated at the Polk County Jail resulting in his death in violation of Florida's Wrongful Death Act, Sections 768.16-768.27, Florida Statutes.

74.     Defendant Judd owed Decedent a non-delegable duty of care to perform and treat Decedent with reasonable care to ensure his safety.

14

75.     Defendant Judd failed to perform his duty of using reasonable care to ensure Decedent's safety.

76.     Defendant Judd breached his duty by:

a. placing Decedent in isolation despite the fact that it exacerbated his mental illness;

b. using restraints for extended periods of time, despite the fact that it exacerbated Decedent's mental illness; and

c. allowing Decedent to be transferred from suicide watch to isolation where he had the opportunity and instruments to attempt suicide.

77.     As a direct and proximate result of Defendant Judd's failure to perform his duty of reasonable care to ensure Decedent's safety, Decedent suffered and died.

78.     It was reasonably foreseeable that harm would befall Decedent either directly or indirectly as a result of the actions and omissions of Defendant Judd.

79.     Decedent suffered wrongful death by virtue of the Defendant Judd's actions, practices, and policies in this regard.  Plaintiff sustained and continues to sustain damages for past and future loss of support, services, companionship and protection and mental pain and suffering.  Decedent's child sustained and continues to sustain damages for lost parental companionship, instruction, and guidance and for mental pain and suffering.  Decedent's father sustained and continues to sustain damages for loss of companionship, support and for mental pain and suffering. In addition, Plaintiff seeks damages as personal representative for past and future medical and funeral expenses and lost earnings.

80.     Plaintiff has complied with the notice requirements of Florida Statute 728.28(6)(a) by giving timely notice to Polk County and to the Florida Department of Financial Services.

WHEREFORE, Plaintiff requests judgment against defendant Sheriff Grady Judd for an amount exceeding $15,000.00, plus pre-judgment and post-judgment interest as provided by law, the costs of this action, and such other relief in the Plaintiff's favor as the Court deems just and equitable.

## COUNT VI – AMERICANS WITH DISABILITIES ACT; REHABILITATION ACT OF 1973 CLAIM AGAINST DEFENDANT JUDD IN HIS OFFICIAL CAPACITY

81.     The factual allegations set forth in paragraphs 12-35 are incorporated by reference herein.

82.     Decedent was at all times during his incarceration a mentally ill inmate who was bipolar and suffered from clinical depression, had suicidal tendencies, and suffered from auditory hallucinations. This condition substantially limited Decedent's ability to conduct one or more of his major daily activities of life including but not limited to being alone without attempting suicide or otherwise harm himself and/or requiring continuous medical attention at a mental health hospital or the jail infirmary. Decedent's mental illness is and was at all relevant times a "disability" under the Americans with Disabilities Act and the Rehabilitation Act of 1973.[2]

83.     The Polk County Sheriff's Office is a "public entity" within the definition of the ADA and Title II of the ADA covers inmates in state prisons.

84.     Defendant Sheriff Grady Judd receives federal funds in connection with the operation of the Polk County Jail and is otherwise subject to the provisions of the Americans with Disabilities Act and the Rehabilitation Act of 1973.

85.     Defendant Judd's agents and employees were authorized to act for Defendant Judd when they committed the ADA violations alleged herein.

---

[2] The Court previously found that Plaintiff has sufficiently alleged that Decedent was a "qualified individual." (Dkt. 56).

16

86.    The Polk County Sheriff's Office provides a handbook to its inmates called "Inmate Rights and Responsibilities." It states that "inmates have the right to expect that as a human being they will be treated respectfully," and that "inmates have the right to a variety of reading materials," "the right to participate in educational programs and work assignments ... in keeping with your interests, needs and abilities."

87.    The Polk County Sheriff's Office offers inmates in general population housing areas a day room so that inmates have human and social interaction. They inmates are provided games, such as checkers, chess, playing cards, etc. The games are provided for group use and are not to be taken to individual cells.

88.    The Polk County Sheriff's Office offers inmates in general population housing a television. Daily scheduling allows for variety of television programs.

89.    The Polk County Sheriff's Office offers inmates an outside recreation area for "inmates to exercise, read newspapers, or just sit around in the fresh air. Normally inmates have three (3) hours of recreation a week."

90.    Decedent, however, was unnecessarily segregated and placed in solitary confinement and excluded from participation in all of the above benefits provided by The Polk County Sheriff's Office. In solitary confinement, Decedent was denied access to the fresh air, to the outside recreation center, to the television, to the games, the educational programs, the normal human interaction that comes from being in the general population housing area, and, he was denied the right to be respected and treated as a *human being*.

91.    Decedent was placed in solitary confinement, denied the aforementioned benefits, and discriminated against because of his mental illness and, thus, due to his disability. Decedent's mental illness (which was exacerbated by his placement in solitary confinement, the

17

use of restraint chair, and the lack of adequate medical health care) caused him to be have irrationally and with a desire to harm himself and others, all of which were the reasons he was placed in solitary confinement.

92.     Defendant also failed to make "reasonable modifications in policies, practices, or procedures when the modifications [were] necessary to avoid discrimination on the basis of a disability" pursuant to 42 U.S.C. 12132 (quoting 28 C.F.R. 35.130(b)(7)).   To the contrary, Defendant Judd and the persons and entities charged with caring for Decedent, acted intentionally and/or with deliberate indifference to Decedent's need for reasonable accommodation by:

> a. placing Decedent in isolation despite the fact that it exacerbated his mental illness;
>
> b. using restraints for extended periods of time, despite the fact that it exacerbated Decedent's mental illness; and
>
> c. allowing Decedent to be transferred from suicide watch to isolation where he had the opportunity and instruments to attempt suicide.

93.     Decedent's need for reasonable accommodations was obvious.

94.     Defendant Judd, and the persons and entities charged with caring for Decedent, knew and/or should have known of Decedent's need for reasonable accommodation.

95.     As a direct and proximate result of Defendant Grady Judd's discriminatory acts and omissions, Decedent suffered personal injury, mental anguish, hardship and wrongful death by virtue of the above-mentioned violations, and will suffer future damages in such categories as well as lost wages and economic damages.   As the duly appointed special administrator of Decedent's estate, Plaintiff is entitled to seek such damages.

WHEREFORE, the Plaintiff requests judgment against Defendant Judd for all damages allowed by law, including attorneys' fees, costs, and such other and further relief as the Court deems just and equitable.

COUNT VII – WRONGFUL DEATH CLAIM AGAINST DEFENDANT PARKER

96.     The factual allegations set forth in paragraphs 12-35 are incorporated by reference herein.

97.     Defendant Crystal Parker, a licensed practical nurse, owed a duty of care to perform and treat the Decedent with reasonable care to ensure his safety.

98.     Defendant Parker owed a duty of care to take all medical history into account when treating Decedent, including his mental illnesses and suicidal tendencies.

99.     Defendant Parker breached the applicable of standards of care by:

a.  failure to comply with NCCHC Essential Standard J-1-01 Restrain and Seclusion by failing to implement and document checks on Decedent every 15 minutes;

b.  failure to comply with NCCHC Appendix D by failing to remove Decedent from segregation;

c.  failure to comply with NCCHC Appendix D by failing to implement regular assessments of Decedent;

d.  failure to comply with NCCHC Essential Standard J-A-03 by removing Decedent from suicide watch when his clinical presentation warranted suicide watch monitoring supervision;

e.  failure to comply with NCCHC Essential Standard J-A-03 by allowing jail staff to make clinical decisions regarding health care by making the decision to remove Decedent from suicide watch "per detention priorities;"

e.  failure to comply with FCAC Standard 13.07 by failing to strip Decedent of all clothing and bedding and by failing to issue him a suicide smock; and

f.  failure to comply with FCAC Standard 13.07 by dressing Decedent in clothing which assisted him in his suicide.

100.   Defendant Parker's negligent care and treatment of Decedent, as identified above, was a legal cause of his injuries, pain and suffering, and death.

101.   Defendant Parker's professional negligence resulted in Decedent being placed in an isolation cell without adequate supervision and with instrumentalities which allowed him to attempt suicide.  As a result, he attempted suicide by hanging, and the attempt caused him to suffer permanent brain damage and, ultimately, death.

102.   Plaintiff's child sustained and continues to suffer damages for lost parental companionship, instruction, and guidance and for mental pain and suffering.  Decedent's father sustained and continues to sustain damages for loss of companionship, support and for mental pain and suffering.  Plaintiff also seeks damages as the personal representative of Decedent's estate for past and future medical and funeral expenses and lost earnings.

103.   Defendant Parker's conduct, as set forth herein, constitutes intentional and deliberate indifference to Decedent's serious mental health medical condition and reckless disregard in providing mental health services to Decedent, and created an unreasonable, substantial risk of injury so as to affect the life and/or health of Decedent.

104.   Plaintiff has complied with the pre-suit requirements of sections 766.106 and 766.203, Florida Statutes.

WHEREFORE, the Plaintiff requests judgment against Defendant Parker for medical negligence and for all damages allowed by law, plus pre-judgment and post-judgment interest as

provided by law, the costs of this action, and such other relief in the Plaintiff's favor as the Court deems just and equitable.

### COUNT XIII – WRONGFUL DEATH CLAIM AGAINST DEFENDANT MCCRAE

105.    The factual allegations set forth in paragraphs 12-35 are incorporated by reference herein.

106.    Defendant Dr. McRae owed a duty of care to perform and treat the Decedent with reasonable care to ensure his safety.

107.    Defendant McRae owed a duty of care to take all medical history into account when treating Decedent, including his mental illnesses and suicidal tendencies.

108.    Defendant McRae breached the applicable of standards of care by:

a.  failure to properly assess and reassess Decedent's physical and mental medical condition while at the Polk County Jail;

b.  failure to properly assess and reassess Decedent's psychiatric medical condition on an ongoing and frequent basis as needed and required;

c.  failure to properly treat his psychiatric disorder with the appropriate medications as his condition warranted;

d.  failure to obtain the appropriate psychiatric consult specializing in Addiction Medicine for Decedent's drug dependency/withdrawal signs and symptoms;

e.  failure to ensure that ensure that Decedent was placed in a safe environment to prevent him from doing physical harm to himself and/or others including, but not limited to, placing Decedent in an isolation cell even though it caused his psychiatric condition to deteriorate and caused him to suffer auditory hallucinations, to hear voices and to harm himself;

21

f.  failure to maintain him on suicide watch based on his recent suicide attempts and auditory hallucinations;

g.  failure to transfer him to a psychiatric hospital so he could receive the appropriate medical care and treatment for his psychiatric disorder considering his long standing history of mental illness, a diagnosis of Bipolar Disorder, and a past and recent history of suicide attempts;

h.  after discontinuing suicide watch, allowing Decedent to return to an isolations cell "per detention priorities" and allowing him to have a sheet (or portion thereof) which game him an opportunity to attempt to kill himself; and

i.  after discontinuing suicide watch, failing to provide follow up treatment for Decedent.

109.  Defendant McRae's negligent care and treatment of Decedent, as identified above, was a legal cause of his injuries, pain and suffering, and death.

110.  Defendant McRae's professional negligence resulted in Decedent being placed in an isolation cell without adequate supervision and with instrumentalities which allowed him to attempt suicide.  As a result, he attempted suicide by hanging, and the attempt caused him to suffer permanent brain damage and, ultimately, death.

111.  Plaintiff's child sustained and continues to suffer damages for lost parental companionship, instruction, and guidance and for mental pain and suffering.  Decedent's father sustained and continues to sustain damages for loss of companionship, support and for mental pain and suffering.  Plaintiff also seeks damages as the personal representative of Decedent's estate for past and future medical and funeral expenses and lost earnings.

112.    Defendant McRae's conduct, as set forth herein, constitutes intentional and deliberate indifference to Decedent's serious mental health medical condition and reckless disregard in providing mental health services to Decedent, and created an unreasonable, substantial risk of injury so as to affect the life and/or health of Decedent.

113.    Plaintiff has complied with the pre-suit requirements of sections 766.106 and 766.203, Florida Statutes.

WHEREFORE, the Plaintiff requests judgment against Defendant McRae Parker for medical negligence and for all damages allowed by law, plus pre-judgment and post-judgment interest as provided by law, the costs of this action, and such other relief in the Plaintiff's favor as the Court deems just and equitable.

## COUNT IX – WRONGFUL DEATH CLAIM AGAINST
DEFENDANT CMS – VICARIOUS LIABILITY FOR ACTIONS OF DEFENDANT PARKER

114.    The factual allegations set forth in paragraphs 12-35 are incorporated by reference herein.

115.    CMS is a Florida corporation that provides contract medical services for inmates in jails and detention facilities.  Pursuant to a contract with Polk County Sheriff Grady Judd, CMS provides, and provided at the time of Decedent's detention, medical services to inmates in Polk County, Florida jails and detention centers.

116.    CMS is vicariously liable for the negligence of Defendant Parker.

117.    Defendant Parker was the actual agent, servant, and employee of Defendant CMS.

118.    Defendant Parker was employed to act on behalf of Defendant CMS, and her actions with respect to the medical treatment of Decedent were controlled by Defendant CMS.

119.   Defendant CMS is responsible for the negligence of Defendant Parker because such negligence occurred while Defendant Parker was providing medical services and care which she was employed by Defendant CMS to perform.

120.   Defendant CMS is responsible for the negligence of Defendant Parker because such negligence occurred when Defendant Parker was doing something that was reasonably incidental to her duties as a medical provider, or alternatively, Defendant Parker was performing medical services that were reasonably foreseeable and reasonably to be expected of medical providers in the same or similar circumstances.

121.   Defendant Parker was performing an essential function for Defendant CMS, which undertook to provide medical treatment to patients such as Decedent.

122.   Defendant CMS exercised control over Defendant Parker and accepted and acknowledged the employer-employee relationship between them.

123.   Defendant CMS, by and through Defendant Parker, breached its duty of care by, and said treatment of Decedent fell below accepted standards of care by, failing to exercise reasonable care when treating Decedent and ensure his safety.

124.   As a direct and proximate result of the negligence CMS, by and through Defendant Parker, specifically placing Decedent in an isolation cell without adequate supervision and with instrumentalities which allowed him to attempt suicide, Decedent suffered permanent brain damage and, ultimately, death.

125.   Plaintiff's child sustained and continues to suffer damages for lost parental companionship, instruction, and guidance and for mental pain and suffering as a proximate result of Defendant CMS, by and through Defendant Parker's negligent actions.  Decedent's father sustained and continues to sustain damages for loss of companionship, support and for mental

pain and suffering.  Plaintiff also seeks damages as the personal representative of Decedent's estate for past and future medical and funeral expenses and lost earnings.

126.   Defendant CMS's conduct, by and through Defendant Parker, constitutes intentional and deliberate indifference to Decedent's serious mental health medical condition and reckless disregard in providing mental health services to Decedent, and created an unreasonable, substantial risk of injury so as to affect the life and/or health of Decedent.

127.   Plaintiff has complied with the pre-suit requirements of sections 766.106 and 766.203, Florida Statutes.

WHEREFORE, the Plaintiff requests judgment against Defendant CMS for medical negligence and for all damages allowed by law, plus pre-judgment and post-judgment interest as provided by law, the costs of this action, and such other relief in the Plaintiff's favor as the Court deems just and equitable.

## COUNT X – WRONGFUL DEATH CLAIM AGAINST
## DEFENDANT CMS – VICARIOUS LIABILITY FOR ACTIONS OF DEFENDANT MCRAE

128.   The factual allegations set forth in paragraphs 12-35 are incorporated by reference herein.

129.   CMS is a Florida corporation that provides contract medical services for inmates in jails and detention facilities.  Pursuant to a contract with Polk County Sheriff Grady Judd, CMS provides, and provided at the time of Decedent's detention, medical services to inmates in Polk County, Florida jails and detention centers.

130.   CMS is vicariously liable for the negligence of Defendant McRae.

131.   Defendant McRae was the actual agent, servant, and employee of Defendant CMS.

25

132.    Defendant McRae was employed to act on behalf of Defendant CMS, and his actions with respect to the medical treatment of Decedent were controlled by Defendant CMS.

133.    Defendant CMS is responsible for the negligence of Defendant McRae because such negligence occurred while Defendant McRae was providing medical services and care which he was employed by Defendant CMS to perform.

134.    Defendant CMS is responsible for the negligence of Defendant McRae because such negligence occurred when Defendant Dr. McRae was doing something that was reasonably incidental to her duties as a medical provider, or alternatively, Defendant McRae was performing medical services that were reasonably foreseeable and reasonably to be expected of medical providers in the same or similar circumstances.

135.    Defendant McRae was performing an essential function for Defendant CMS, which undertook to provide medical treatment to patients such as Decedent.

136.    Defendant CMS exercised control over Defendant McRae and accepted and acknowledged the employer-employee relationship between them.

137.    Defendant CMS, by and through Defendant McRae, breached its duty of care by, and said treatment of Decedent fell below accepted standards of care by, failing to exercise reasonable care when treating Decedent and ensure his safety.

138.    As a direct and proximate result of the negligence CMS, by and through Defendant McRae, specifically placing Decedent in an isolation cell without adequate supervision and with instrumentalities which allowed him to attempt suicide, Decedent suffered permanent brain damage and, ultimately, death.

139.    Plaintiff's child sustained and continues to suffer damages for lost parental companionship, instruction, and guidance and for mental pain and suffering as a proximate result

26

of Defendant CMS, by and through·Defendant McRae's negligent actions.   Decedent's father sustained and continues to sustain damages for loss of companionship, support and for mental pain and suffering.   Plaintiff also seeks damages as the personal representative of Decedent's estate for past and future medical and funeral expenses and lost earnings.

140.   Defendant CMS's conduct, by and through Defendant McRae, constitutes intentional and deliberate indifference to Decedent's serious mental health medical condition and reckless disregard in providing mental health services to Decedent, and created an unreasonable, substantial risk of injury so as to affect the life and/or health of Decedent.

141.   Plaintiff has complied with the pre-suit requirements of sections 766.106 and 766.203, Florida Statutes.

WHEREFORE, the Plaintiff requests judgment against Defendant CMS for medical negligence and for all damages allowed by law, plus pre-judgment and post-judgment interest as provided by law, the costs of this action, and such other relief in the Plaintiff's favor as the Court deems just and equitable.

### COUNT XI – WRONGFUL DEATH CLAIM AGAINST DEFENDANT CMS

142.   The factual allegations set forth in paragraphs 12-35 are incorporated by reference herein.

143.   CMS is a Florida corporation that provides contract medical services for inmates in jails and detention facilities.   Pursuant to a contract with Polk County Sheriff Grady Judd, CMS provides, and provided at the time of Decedent's detention, medical services to inmates in Polk County, Florida jails and detention centers.

144.   Defendant CMS owed a duty of care to Decedent to ensure the competence of its employees, including Defendants McRae and Parker.

145.   Defendant CMS breached this duty of care by:

a.) failing to use reasonable care in selecting and hiring employees who were competent to carry out the duties owed to patients like Decedent;

b.) failing to use reasonable care in training its employees to handle patients with mental illnesses and suicidal tendencies, like the Decedent; and

c.) failing to adequately supervise its employees when handling patients with mental illnesses and suicidal tendencies, like the Decedent.

146.   As a direct and proximate result of Defendant CMS failing to ensure the competence of its employees, Decedent attempted suicide by hanging, and the attempt caused him to suffer permanent brain damage and, ultimately, death.

147.   Plaintiff's child sustained and continues to suffer damages for lost parental companionship, instruction, and guidance and for mental pain and suffering as a direct result of the negligence of Defendant CMS. Decedent's father sustained and continues to sustain damages for loss of companionship, support and for mental pain and suffering. Plaintiff also seeks damages as the personal representative of Decedent's estate for past and future medical and funeral expenses and lost earnings.

148.   Defendant CMS's conduct, as set forth herein, constitutes intentional and deliberate indifference to Decedent's serious mental health medical condition and reckless disregard in providing mental health services to Decedent and created an unreasonable, substantial risk of injury so as to affect the life and/or health of Decedent.

WHEREFORE, the Plaintiff requests judgment against defendant CMS for all damages allowed by law, plus pre-judgment and post-judgment interest as provided by law, the costs of this action, and such other relief in the Plaintiff's favor as the Court deems just and equitable.

28

]
## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury on all issues in this matter.


Dated: September 13, 2013

Respectfully Submitted,


s/Melody June Manning
**Paul W. Rebein, Esquire**
Florida Bar No. 0488003
**Melody J. Manning, Esquire**
Florida Bar No. 0059248
**Rebein Bangerter Rebein, P.A.**
1201 N. Clearview Avenue
Tampa, Florida 33607
Telephone:  (813) 305-7285
Facsimile:  (813) 402-0288
SERVICE@RBR3.com – pleadings only
**Attorneys for Plaintiff**

29